### IN RE BOYER'S GUARDIANSHIP.
### RITTENOUR v. HESS.

[No. 14,255. Filed February 11, 1931. Rehearing denied March 29, 1931. Transfer denied February 24, 1933.]

*Berry & Nolan* and *Victor H. Ringer*, for appellant.

*McAdams & Schultz* and *Mehaffey & Haupt*, for appellee.

LOCKYEAR, C. J.—This action is, in substance, a complaint for review proceedings and judgment and was brought by the appellant in the Tippecanoe Circuit Court to set aside a finding and judgment of that court removing the appellant as guardian of Hattie E. Boyer, a person of unsound mind.

A motion for a new trial was filed on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law. The court overruled said motion and the action of the court in that behalf is assigned as error in this appeal. On August 15, 1927, the

appellant was directed by the court to file a report in said guardianship; on the 24th day of said month, accompanied by her attorney, she filed and presented to the judge of said court her current report in compliance with the order of the court. The court, upon consideration of the report, as shown, found that she had used $5,115 of her ward's money and had given notes therefor to herself as guardian, and further that she had converted $1,110 of her ward's funds to her own use, which amount she asked credit for in her report for services for two years. The court further found that she had not managed the estate for the best interests of her ward and that she was not a suitable person to be entrusted with the custody and management of the ward's estate. He then made and entered an order and decree whereby she was removed from her trust.

After such removal the guardianship was transferred to the Warren Circuit Court, where appellee, Hess, was appointed guardian. Rosa C. Rittenour appealed from the order of the Warren Circuit Court, which appointed George Hess as guardian and directed her (Rosa C. Rittenour) to turn over to him certain property. The Supreme Court, in affirming that judgment, held that the question of whether the judgment of the Tippecanoe Circuit Court was correct or erroneous was not before it for decision, the court saying, "The appellant had the right to appeal from such order or judgment, but did not do so and she cannot have a review . . . from the same by a petition filed in the Warren circuit court." *Rittenour* v. *Hess* (1929), 201 Ind. 327, 166 N. E. 657, 658. The appellant therefore brought this action in the Tippecanoe circuit court to set aside the finding and judgment of that court removing appellant as guardian and the court found against her.

This proceeding is in the nature of a review of a judgment under Burns 1926, Sec. 669 and 670, under which

section any person who is a party to any judgment may file in the court where such judgment is rendered a complaint for review of the proceedings and judgment—for any error of law appearing in the proceedings and judgment within one year after the redition of the judgment. The review of a judgment for error of law is a substitute for appeal and will only lie when an appeal might be taken. *Clark* v. *Hillis* (1899), 134 Ind. 421, 34 N. E. 13; *American Insurance Co.* v. *Gibson* (1885), 104 Ind. 336, 342, 3 N. E. 892.

The question arises in this case whether the appellant could have appealed when the court entered a judgment removing her and was it her only remedy? The case of *Stayner* v. *Joice* (1882), 82 Ind. 35, is in point. The question presented was whether the finding of the court was contrary to law. The case was prepared for an appeal but instead of filing a transcript in the Supreme Court, the appellant commenced a suit in the trial court to review the judgment and appealed in the latter proceeding as has been done in the case at bar. The court held in that case that the proceedings were proper and reversed the court below on a question of law. Where the time for appeal has expired before an application for review is made, there can be no appeal from a judgment on the petition for review. *Klebar* v. *Corydon* (1881), 80 Ind. 95. But in the instant case the complaint was filed in time and no appeal was taken from the original judgment.

There is no controversy about the facts stated by the court.

The appellee contends that she cannot be removed without notice in compliance with the statute regulating the removal of guardians as is provided in Burns 1926, Sec. 3411 (Acts 1881 Special Session, page 526), which section is an amendment of R. S. 1852, page 321, being, "An act touching the relation of guardian and ward." An-

other act, the act of 1852, page 333, is an act defining who are persons of unsound mind and providing for the appointment of guardian, defining their powers and duties. In this act concerning persons of unsound mind, we find the provisions substantially as are found in Burns 1926, Sec. 3430, to-wit: "The same duties are required of and the same powers granted to guardians of persons of unsound mind as are required of and granted to guardians of minors, so far as the same may be applicable."

The act of 1852 pertaining to guardians of minors and all amendments thereto requires a notice to a guardian in proceedings to remove them.

The act of 1852 pertaining to guardians of persons of unsound mind and all amendments thereto are silent as to notice or proceedings to remove a guardian.

Nor does Sec. 3430, Burns 1926, *supra,* have any reference to proceedings to remove a guardian but only refers to powers and duties of the guardian of a person of unsound mind, which powers and duties shall be the same as guardians of minors.

A guardian is a mere officer of the court and is at all times subject to the supervision and control of the court appointing him in everything that pertains to the management of the ward's estate or to his person.

In Re Guardianship of Chambers (1915), 46 Okla. 139, 148 Pac. 148, it is held, "The constitution of Oklahoma, Art. 7, Sec. 13, confers exclusive jurisdiction upon the county court in the matter of the appointment of guardians of minors, etc." This being true, it necessarily follows that the county court has the inherent power to remove guardians for cause, and there is authority for removal for statutory causes upon notice. No notice was given but an order was made by the court requesting the guardian to appear before the court and explain certain features of his report. He was present during the examination of the report. In his report and in his oral

examination he admitted a shortage of $800 and under such circumstances there could be no necessity for any notice. It was not only the court's right, but its duty to remove him. Citing *Deegan* v. *Deegan et al.* (1894), 22 Nev. 185, 37 Pac. 368, 58 Am. St. Rep. 742. See *State* v. *Hunt* (1891), 46 Mo. App. 616.

The fact that any person interested in the ward or his estate may make complaint does not affect the inherent power of the court to issue a citation on his own motion commanding the guardian to appear before the court and show cause why he should not be removed. In re Ford (1911), 157 Mo. App. 141, 137 S. W. 32.

In Ex Parte Cottingham, Guardian (1890), 124 Ind. 250, 24 N. E. 750, there was a failure of a guardian to comply with an order to make a report and file an inventory *instanter;* a citation was issued requiring him to do so within three days; there was a delay of twelve days, and the court removed him and appointed another guardian without any further notice. The court said: "The law made it the duty of the appellant to file an inventory . . . within three months after his appointment; and, upon a failure so to do, it became the duty of the court to *summarily* (our italics) remove him, and appoint his successor," and he was not entitled to notice.

In this case under consideration the appellant does not come into court with clean hands. If she had been charged by another person with having misappropriated funds of her ward, in all fairness she would have been entitled to a notice and a hearing, but when she comes in with an attorney and files a written report under oath admits the conversion of her ward's funds, we say, as was said of the court Ex Parte Cottingham, supra, we think the court was acting with commendable vigilance when it discharged her.

To hold that she was entitled to notice of an admitted fact would be unreasonable. Judgment affirmed.